## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

**FAIRBURN HOSPITALITY, LLC; AND VISION HOSPITALITY, LLC**

**PLAINTIFFS**

**VERSUS**

**CIVIL ACTION NO.:**
_____

**UNITED STATES SMALL BUSINESS ADMINISTRATION, ISABELLA CASILLAS GUZMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION; JANET YELLEN, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF TREASURY; AND THE UNITED STATES DEPARTMENT OF JUSTICE; ATTORNEY GENERAL MERRICK GARLAND**

**DEFENDANTS**

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND MANDAMUS RELIEF

COMES NOW, Plaintiffs Fairburn Hospitality, LLC ("Fairburn Hospitality"), and Vision Hospitality, LLC ("Vision Hospitality") (collectively, "Plaintiffs"), by and through their attorneys, and as for its Complaint against Defendants and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the

purpose of determining a question of actual and immediate controversy between the parties.

2.    Plaintiffs seek a declaratory judgment that (1) Plaintiffs were eligible to apply for a Paycheck Protection Program ("PPP") loan; (2) Plaintiffs were eligible to receive a PPP loan; (3) Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts was not prohibited by and did not violate the U.S. Code or SBA regulations; (4) Plaintiffs used the PPP loan proceeds appropriately for eligible expenses; (5) Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and (6) Plaintiffs did not falsely certify its PPP loan forgiveness application.

3.    Further, Plaintiffs seeks mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendants to forgive Plaintiffs' Second Draw PPP Loan Forgiveness Applications.

4.    Defendant U.S. Department of Justice has issued Civil Investigative Demands ("CIDs") to Plaintiffs in an effort to determine the legitimacy of PPP loans and associated loan forgiveness extended to Plaintiffs by Defendant United States Small Business Administration ("SBA"), presumably in an effort to bolster allegations of violations of the False Claims Act and FIRREA. As such, an actual case and controversy exists.

## PARTIES

5.    Fairburn Hospitality is a limited liability company organized under the laws of Georgia with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Fairburn Hospitality owns and operates a Fairfield Inn & Suites, 7775 Ella Lane, Fairburn, Georgia 30213, located in the Northern District of Georgia.

6.    Vision Hospitality is a limited liability company organized under the laws of Indiana with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Vision Hospitality owns and operates a La Quinta Inn and Suites, 175 College Drive, Dalton, Georgia 30720, located in the Northern District of Georgia.

7.    Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the CARES Act, the SBA administers the PPP.

8.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for this cause of action.13 C.F.R. § 101.1 01(a)(1-2).

9.    Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

10.    Defendant U.S. Department of Justice ("DOJ") is an executive department of

the United States federal government.

11.    Defendant Merrick Garland is the Attorney General of the United States, the principal officer of DOJ, and is sued only in his official capacity.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331 and 2201 because the claims arise under the laws of the United States.

13.    This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

14.     The jurisdiction to grant declaratory relief is conferred upon the Court by Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201.

15.    The SBA's denial of PPP relief to Plaintiffs are final agency actions under 5 U.S.C. § 704, which this Court has authority to review under 5 U.S.C. § 702.

16.    Further, Plaintiffs seek mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendant SBA to forgive Plaintiffs' Second Draw PPP Loan Forgiveness Application.

17.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, a substantial part of the events giving rise to the claims occurred in this judicial district, Plaintiffs are incorporated and operate in this judicial district, and no real property is involved in

the action.

18.    Venue is also proper in this judicial district specifically because the U.S. Department of Justice is conducting an investigation into Fairburn Hospitality and Vision Hospitality, and these investigations focused primarily on conduct within this judicial district.

## LEGAL BACKGROUND

### I.    The CARES Act and the Paycheck Protection Program

19.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

20.    One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

21.    To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

22.    In the PPP loan application (SBA Form 2483), the business (through its

authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

23.    A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

24.    PPP loan proceeds were required to be used by the business on certain permissible expenses — payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

     A.    First Draw PPP Borrower Application Form

25.    The PPP Borrower Application Form, effective April 2, 2020, required the applicant to make the following certifications and authorizations, *inter alia*, relevant to this matter:

    i.    The applicant was eligible to receive a loan under the rules ("PPP Rules") in effect at the time this application was submitted;

    ii.    All SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

    iii.    That funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules;

    iv.    That applicant would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following the loan;

    v.    That the applicant understood that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs; and

    vi.    That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

B.    <u>First Draw PPP Loan Forgiveness Application</u>

26.    The First Draw PPP Loan Forgiveness Application Form 3508EZ, expiration date October 31, 2020, required the eligible recipient to make the following certifications:

    i.    That the dollar amount for which forgiveness was requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- included payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applied, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

ii. That the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020;

iii. That the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law; and

iv. That the tax documents the applicant submitted to the Lender were consistent with those the Borrower has submitted/would submit to the IRS and/or state tax or workforce agency.

In addition, the Authorized Representative of the Borrower must certify by initialing at least **ONE** of the following two items:

v. That the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

vi. That the Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance

with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by certain federal governmental agencies, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19

C.    Second Draw PPP Borrower Application Form

27.    The Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to make the following representations, authorizations, and certifications, *inter alia*, relevant to this matter:

i.    That the applicant was eligible to receive a loan under the rules in effect at the time the application was submitted;

ii.    That all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

iii.    That the applicant had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period;

iv.    That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules;

v.    That the applicant understood that loan forgiveness would be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs; and

vi.    That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

D.    Second Draw PPP Loan Forgiveness Application

- 9 -

28.    The Second Draw PPP Loan Forgiveness Application Form 3508S, revised

January 19, 2021, with an expiration date of July 31, 2021, required the eligible

recipient to make the following certifications:

      i.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds;

- the amount of PPP loan proceeds that must be used for payroll costs;

- the calculation and documentation of the Borrower's revenue reduction (if applicable); and

- the calculation of the Borrower's Requested Loan Forgiveness Amount.

     ii.    That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law;

## II.    The False Claims Act

29.    Plaintiffs repeat and incorporate by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

30.    The FCA provides, in pertinent part, that any person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

31.    FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,946 to a maximum of $27,894. *See* 28 C.F.R. § 85.5.

32.    For purposes of the FCA, the terms "knowing" and "knowingly"

     i.  mean that a person, with respect to information—

         a.  has actual knowledge of the information;

         b.  acts in deliberate ignorance of the truth or falsity of the information; or

         c.   acts in reckless disregard of the truth or falsity of the information; and

    ii.  require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

33.    Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. 31 U.S.C. § 3729(b)(2)(A).

34.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

**III.    FIRREA**

35.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

36.     Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,073,133 for assessments after December 13, 2021, for which violations occurred after November 2, 2015).

37.     The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. *Id*.

38.     The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit

Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

## FACTUAL BACKGROUND

### I.    Fairburn Hospitality

39.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.    First Draw PPP Loan Application

40.    On or before April 3, 2020, Fairburn Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender").  A copy of Fairburn Hospitality's First Draw PPP Loan Application is attached hereto as Exhibit A.

41.    As part of its First Draw PPP Loan Application, Fairburn Hospitality certified that:

> i.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Fairburn Hospitality can prove its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit A, attached hereto.

   ii.   all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

   iii.   funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

   iv.   it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Fairburn Hospitality can prove compliance, as illustrated in Exhibit A, attached hereto.

   v.   the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

42.    On April 13, 2020, the Lender approved Fairburn Hospitality' First Draw PPP Loan Application.

43.    On April 20, 2020, loan proceeds were disbursed to Fairburn Hospitality and deposited into Fairburn Hospitality' bank account ending in X-34603.

44.    Fairburn Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.    <u>First Draw PPP Loan Forgiveness Application</u>

45.    On November 20, 2020, Fairburn Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

46.    As part of its First Draw PPP Loan Forgiveness Application, Fairburn Hospitality certified, *inter alia*, that:

     i.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

     ii.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

     iii.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

     iv.    the Borrower did not reduce salaries or hourly wages by more than 25

percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

v.    the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

vi.    it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto;

vii.    it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and

Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit B, attached hereto.

47.    On December 8, 2020, Fairburn Hospitality received notification that its First Draw PPP Loan had been forgiven.

B.    Second Draw PPP Loan Application

48.    On January 12, 2021, Fairburn Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Fairburn Hospitality's Second Draw PPP Loan Application is attached hereto as Exhibit C.

49.    As part of its Second Draw PPP Loan Application, Fairburn Hospitality certified, *inter alia*, that:

i.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Fairburn Hospitality submitted proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit C, attached hereto.

ii.    all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

iii.    it had realized a reduction in gross receipts in excess of 25% relative to

the relevant comparison time period, with which Fairburn Hospitality

proved compliance, as illustrated in Exhibit C, attached hereto.

iv.    the funds would be used to retain workers and maintain payroll; or

make payments for mortgage interest, rent, utilities, covered operations

expenditures, covered property damage costs, covered supplier costs,

and covered worker protection expenditures as specified under the

Paycheck Protection Program Rules.

v.    the information provided in the application and the information

provided in all supporting documents and forms was true and accurate

in all material respects.

50.    On January 23, 2021, the Lender approved Fairburn Hospitality's application

for a Second Draw PPP Loan.

51.    On March 8, 2021, loan proceeds were disbursed to Fairburn Hospitality and

deposited into Fairburn Hospitality's bank account ending in X-34603.

52.    Fairburn Hospitality complied with all certifications in its Second Draw PPP

Loan Application.

D.    Second Draw PPP Loan Forgiveness Application

53.    On July 19, 2021, Fairburn Hospitality submitted a forgiveness application

for its Second Draw PPP Loan (Form 3508S).

54.    As part of its Second Draw PPP Loan Forgiveness Application, Fairburn

Hospitality certified, *inter alia*, that:

i.  That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit D, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit D, attached hereto;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Fairburn Hospitality proved compliance, as illustrated in Exhibit D, attached hereto; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit D, attached hereto.

ii.  That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Fairburn Hospitality proved compliance, as illustrated in Exhibit D, attached hereto.

55.  On June 30, 2022, Fairburn Hospitality received notification that the SBA

would not forgive its Second Draw PPP Loan because Fairburn Hospitality and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Fairburn Hospitality timely appealed this decision, and the SBA "charged off" the loan as to Fairburn Hospitality's Lender, as illustrated in Exhibit E, attached hereto.

56.    Despite the charge off to the Lender, Fairburn Hospitality remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Fairburn Hospitality that its Second Draw PPP Loan has been forgiven.

57.    On January 24, 2024, Fairburn Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its applications for PPP loans and loan forgiveness.

58.    As of July 11, 2024, despite having appealed SBA's denial of its Second Draw PPP Loan Forgiveness Application, Fairburn Hospitality has not received notification that its Second PPP Loan has been forgiven, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

**II.    Vision Hospitality**

59.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

      A.    <u>First Draw PPP Loan Application</u>

60.    On or before April 3, 2020, Vision Hospitality applied for a First Draw PPP Loan through Citizens National Bank ("Lender"). A copy of Vision Hospitality's

First Draw PPP Loan Application is attached hereto as Exhibit F.

61.    As part of its First Draw PPP Loan application, Vision Hospitality certified, *inter alia*, that:

i.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Vision Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and less than 500 Employees per location, as detailed in Exhibit F, attached hereto.

ii.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

iii.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

iv.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Vision Hospitality can prove compliance, as illustrated in Exhibit F, attached hereto.

> v.   the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

62.   On April 11, 2020, the Lender approved Vision Hospitality's application.

63.   On April 14, 2020, loan proceeds were disbursed to Vision Hospitality and deposited into Vision Hospitality's bank account ending in X-70779.

64.   Vision Hospitality complied with all certifications in its First Draw PPP Loan Application.

### B.   First Draw PPP Loan Forgiveness Application

65.   On November 20, 2020, Vision Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

66.   As part of its First Draw PPP Loan Forgiveness application, Vision Hospitality certified, *inter alia*, that:

> i.   the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto;

> ii.   the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Vision Hospitality proved compliance, as illustrated in Exhibit G,

attached hereto;

iii.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto;

iv.    the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto;

v.    the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto;

vi.    it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period,

with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto; and

vii.  it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Vision Hospitality proved compliance, as illustrated in Exhibit G, attached hereto.

67.  On December 8, 2020, Vision Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.  Second Draw PPP Loan Application

68.  On January 12, 2021, Vision Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Vision Hospitality's Second Draw PPP Loan Application is attached hereto as Exhibit H.

69.  As part of its Second Draw PPP Loan Application, Vision Hospitality certified, *inter alia*, that:

i.  it was eligible to receive a loan under the rules in effect at the time the

application was submitted, which Vision Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit H, attached hereto.

ii. all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

iii. it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Vision Hospitality proved compliance, as illustrated in Exhibit H, attached hereto.

iv. the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

v. the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

70. On January 21, 2021, the Lender approved Vision Hospitality's Second Draw PPP Loan Application.

71. On March 31, 2021, loan proceeds were disbursed to Vision Hospitality and

deposited into Vision Hospitality's bank account ending in X-70779.

72.    Vision Hospitality complied with all certifications in its Second Draw PPP Loan Application.

>    D.    Second Draw PPP Loan Forgiveness Application

73.    On July 21, 2021, Vision Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

74.    As part of its Second Draw PPP Loan Forgiveness application, Vision Hospitality certified that:

>    i.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:
>
>    - eligible uses of PPP loan proceeds, with which Vision Hospitality proved compliance, as illustrated in Exhibit I, attached hereto;
>
>    - the amount of PPP loan proceeds that must be used for payroll costs, with which Vision Hospitality proved compliance, as illustrated in Exhibit I, attached hereto;
>
>    - the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Vision Hospitality proved compliance, as illustrated in Exhibit I, attached hereto; and
>
>    - the calculation of the Borrower's Requested Loan Forgiveness

Amount, with which Vision Hospitality proved compliance, as illustrated in Exhibit I, attached hereto.

ii.   That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Vision Hospitality proved compliance, as illustrated in Exhibit I, attached hereto.

75.   On June 30, 2022, Vision Hospitality received notification that the SBA would not forgive its Second Draw PPP Loan because Vision Hospitality and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Vision Hospitality timely appealed this decision, and SBA "charged off" the loan as to Vision Hospitality's Lender, as illustrated in Exhibit J, attached hereto.

76.   Despite the charge off to the Lender, Vision Hospitality remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Vision Hospitality that its Second Draw PPP Loan has been forgiven.

77.   On January 24, 2022, Vision Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its applications for PPP loans and loan forgiveness.

78.   As of July 11, 2024, despite having appealed SBA's denial of its Second Draw PPP Loan Forgiveness Application, Vision Hospitality has not received

notification from SBA that its Second Draw PPP Loan has been forgiven, presumably due to DOJ's investigation. As such, an actual case and controversy exists.

## CLAIMS FOR RELIEF

## DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

79.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.    Plaintiffs face the risk of a civil enforcement action under the FCA.

81.    Defendants' interpretation of the FCA and its regulations is inconsistent with the statutory and regulatory text and purports to obligate Plaintiffs to follow requirements that are unsupported by the relevant statute and regulations.

82.    Accordingly, an actual or substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.

83.    This dispute is ripe. As set forth above, on information and belief, Defendants intend to file a civil enforcement action based on alleged violations of the False Claims Act, and Plaintiffs dispute the factual and legal basis for such action.

84.    A declaration would clarify and settle the parties' legal obligations under the text of the FCA and its implementing regulations.

85.    Plaintiffs are thus entitled to declaratory relief as set forth below.

### WRIT OF MANDAMUS AS TO FAIRBURN HOSPITALITY AND VISION HOSPITALITY'S SECOND DRAW PPP LOAN FORGIVENESS APPLICATIONS
### 28 U.S.C. §§ 1361 and 1651(a))

86.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.    In relevant part, the All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writes necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

88.    District Courts may grant mandamus relief by "compel[ling] an officer or employee of the United States of any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

89.    A mandamus is warranted when an agency's delay in rendering a decision is egregious. *In re Nat. Res. Def. Council, Inc*., 956 F.3d 1134, 1138 (9th Cir. 2020). "Repeatedly courts in this and other circuits have concluded that "a reasonable time for agency action is typically counted in weeks or months, not years." *In re Nat. Res. Def. Council, Inc*., 956 F.3d 1134, 1139 (9th Cir. 2020) (internal quotations omitted.); *see In re Core Commc'ns*, 531 F.3d 849, 857 (D.C. Cir. 2008) (finding six-year delay unreasonable); *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (finding nine-year delay unreasonable); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam) (finding six year delay

unreasonable).

90.    As outlined above, Plaintiffs submitted their Second Draw PPP Loan Forgiveness Applications and accompanying documents to SBA.  As of July 11, 2024, almost three years after receiving Plaintiffs' Second Draw PPP Loan Forgiveness Applications, SBA has not provided Plaintiffs with notification that their Second Draw PPP Loans have been forgiven.

91.    A mandamus compelling SBA to forgive Plaintiffs' Second Draw PPP Loans is warranted given the egregious and unreasonable delay.

## PRAYER FOR RELIEF

For the reasons above, Plaintiffs respectfully request that the Court:

1.    Declare that:

   a.  Plaintiffs were eligible to apply for a PPP loan;

   b.  Plaintiffs were eligible to receive a PPP loan;

   c.  Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts was not prohibited by and did not violate the U.S. Code or SBA regulations;

   d.  Plaintiffs used the PPP loan proceeds appropriately for eligible expenses;

   e.  Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and

      f. Plaintiffs did not falsely certify their PPP loan forgiveness application.

2.     Enter an order compelling Defendants SBA and Isabella Casillas Guzman to:

      a. Immediately forgive Plaintiffs' Second Draw PPP Loans; and

      b. Implement a full, speedy, and adequate administrative review process if Defendants intend to deny forgiveness of Plaintiffs' Second Draw PPP Loans.

3.     Award costs and attorneys' fees to Plaintiffs; and

4.     Grant such other relief as may be just and proper.

THIS the 11th day of July, 2024.

RESPECTFULLY SUBMITTED,

*/s/James Walter Frazer Green*
James Walter Frazer Green,
   GA Bar No. 302677
PHELPS DUNBAR LLP
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
P.O. Box 4412
Baton Rouge, LA 70821-4412
Telephone: (225) 346-0285
Fascimile: (225) 381-9197
Email: walt.green@phelps.com

ATTORNEYS FOR PLAINTIFFS
FAIRBURN HOSPITALITY, LLC AND
VISION HOSPITALITY, LLC